# A G R E E M E N T

*Between*

## ASSOCIATED GENERAL CONTRACTORS OF ALASKA

*And*



## THE ALASKA REGIONAL COUNCIL OF CARPENTERS

*And*

## ITS AFFILIATED LOCAL UNIONS



### September 1, 2004 – June 30 2008



Exhibit 2
Page 1 of 3

ARTICLE 8 Hours of Work and Overtime ............................ 11
Section 1 Hours of Work.................................................... 11
Section 2 Overtime Rates.................................................... 11
Section 3 Sundays and Holidays......................................... 12
Section 4 Multiple Shifts ................................................... 12
Section 5 Dewatering and Weather Protection.................... 13
Section 6 Time Worked...................................................... 13
Section 7 Show Up Guarantee ........................................... 13
Section 8 Meals and Meal Periods ..................................... 13

ARTICLE 9 Holidays ........................................................... 14

ARTICLE 10 Working Rules .................................................. 15
Section 1 Working Rules .................................................... 15
Section 2 Foremen ............................................................. 16
Section 3 Termination ........................................................ 16
Section 4 Pay Day .............................................................. 17
Section 5 Payment of Wages upon Termination ................. 17
Section 6 Payroll Week ...................................................... 17
Section 7 Itemize Deductions of Paycheck......................... 17

ARTICLE 11 Miscellaneous Conditions.................................. 18
Section 1 Employer Required Physicals ............................. 18
Section 2 Lost-Time and Accidents ................................... 18
Section 3 Injured Person to get Priority for Rehire............. 18
Section 4 Change in Policy ................................................ 19
Section 5 Absenteeism....................................................... 19
Section 6 Pre-Job Conference ........................................... 19
Section 7 Work Assignments ............................................. 19

ARTICLE 12 Union Representation......................................... 19
Section 1 Admission to Job ............................................... 19
Section 2 Job Steward ....................................................... 20

ARTICLE 13 Subsistence and Quarters .................................. 20
Section 1 Employer Provided Camp or
Suitable Accommodations ................................... 20
Section 2 Per-Diem ........................................................... 21
Section 3 Remote Area Residents ...................................... 21
Section 4 Sanitation .......................................................... 21

Section 5 Board and Lodging for Injured Employees .......... 21

ARTICLE 14 Transportation, Travel Expense
and Travel Time ................................................. 22
Section 1 Transportation to the Site ................................... 22
Section 2 Transportation from the Site ............................... 22
Section 3 Established Point of Pickup ................................ 23
Section 4 Death and Return of Deceased............................ 23

ARTICLE 15 Transportation of Tools and Personal Effects ...... 23
Section 1 Transportation of Tools ...................................... 23
Section 2 Personal Effects ................................................. 24

ARTICLE 16 First Aid and Safety ......................................... 24

ARTICLE 17 Management Rights .......................................... 25

ARTICLE 18 Special Conditions ........................................... 26

Signatures........................................................... 26

ii

iii

Exhibit 2
Page 3 of 31

## PREAMBLE

THIS AGREEMENT between the Associated General Contractors of Alaska, Inc., and the Alaska Regional Council of Carpenters, which includes the Carpenters Local 1243, Carpenters Local 1281 and Carpenters Local 2247 of the United Brotherhood of Carpenters and Joiners of America exercising jurisdiction over the State of Alaska is a successive principal Agreement of the 2001 - 2004 Agreement and all other prior Agreements between the Associated General Contractors of Alaska, Inc., and the aforementioned Unions.

All terms of the male gender hereinafter referred to shall be deemed to include the female gender and vice versa.

The area jurisdiction of each local Union signatory hereto shall be as established by the General President of the United Brotherhood of Carpenters and Joiners of America.

## WITNESSETH PURPOSE OF THIS AGREEMENT

It is the purpose of this Agreement to assure a supply of competent and capable Employees for the performance of the work undertaken by the Contractors; to maintain a continuity of employment to the persons employed; to insure amicable labor-management relations; eliminate work stoppage or delays in the prosecution of all work undertaken by the Employer; improve the competitive position of the organized sector of the construction industry, and to record the terms of agreement with respect to rates of pay, hours of work, and other conditions of employment arrived at through the process of collective bargaining. It is also the intent of this Agreement to recruit, train, and employ members of minority groups, as defined by the Office of Equal Employment Opportunity.

The Employers and the Union agree that there shall be no unlawful discrimination in hiring, referral, or any aspect of employment. No Employee shall be discriminated against for upholding Union principles; and any Employee who works under the instruction of the Unions, or who serves on a committee, or as a delegate in or

Exhibit 2
Page 4 of 31

out of the Union's jurisdiction, shall not lose their position nor shall an Employee be discriminated against for any of above mentioned reason.

## ARTICLE ONE
## PARTIES AND TERRITORY AFFECTED

**Section 1. Parties:**
The term "Union" shall refer to Locals 1243, 1281 and 2247 of the United Brotherhood of Carpenters and Joiners of America exercising jurisdiction within the legal boundaries of the State of Alaska. The Term "AGC" shall refer to the Associated General Contractors of Alaska, Inc. For the Purposes of this agreement the AGC is not acting as an agent or collective bargaining representative for any employers who are or may become signatory to this agreement.

**Section 2. Union Recognition and Employee Coverage:**
The provisions of this Agreement shall be binding upon the Employers and the Union. The Employers recognize the Union as the exclusive bargaining representative for all carpenters and apprentices employed on all their construction work in the area covered by this Agreement.

**Section 3. Subcontracting:**
The Contractors agree that in the event any of the work coming under the scope of this Agreement is to be sub-contracted, they shall:

a. Furnish the Union the name and address of said subcontractor immediately upon awarding the sub-contract.

b. To prevent the loss of employment by Employees under the craft jurisdiction bargained for by the parties to this Agreement, the Contractor agrees as follows: when during the term of this Agreement, the Contractor wishes to subcontract work that normally falls under this Agreement the Contractor agrees that the work will be subcontracted only to an Employer who is signatory to a collective bargaining agreement with the Carpenters Union. Upon timely notification by the Union the Contractor shall assume the responsibility to see that the sub-contractor adheres to the wages

2

and conditions outlined in this Agreement and that Pension, Health and Security, and Training fund contributions are timely.

c. The Union agrees to notify the Contractor within 15 days of any delinquent payment of wages and within 45 days of any delinquent fringe benefits owed by the subcontractor, and to further issue a certificate to the Contractor or the subcontractor when these payments have been made in order that the Contractor may make payment to the subcontractor. The 45-day provision of this Article will not apply to inaccurate or falsified reports.

d. It is understood that the subcontracting provision relates only to work performed at the job site. The Union agrees to allow a subcontractor to be bound by the terms of this Agreement, on that work performed for an Employer on an individual project without binding the subcontractor to this Agreement on any other work for the same or any other Employer. The parties agree that the subcontracting provision of this section shall not apply to a particular scope of work if no quotes are received from union subcontractors for that given scope of work or no competitive quotes are received from Union subcontractors on a private money job.

e. Whenever the Employer is obligated to satisfy DBE-WBE recruiting requirements, the Union and the Employer by mutual agreement may waive subsection a and b prior to commencement of the work in the event an Employer and Union are unable to find qualified competitive union minority subcontractors.

f. No work will be let by piecework, contract, or lump sum direct with journeymen or apprentices for labor services.

**Section 4. Favored Nations:**
If the Union enters into any agreement with any individual employer or group of employers performing work on any project or in any geographical area covered by the terms of this Agreement and that Agreement provided for more favorable wages, hours or conditions to any other Employer, the Employers signatory hereto, after sending written notice of such intention, shall be afforded the privilege to adopt such advantageous terms and conditions for the scope of work

3

Exhibit 2
Page 5 of 31

'as set forth in the Agreement with the individual Employer or group of Employers.

For special conditions or wages relating to a particular project, the Contractor has the obligation of contacting the Union prior to bid to ascertain the special wage or condition.

The Union will provide such signatory employers with a true copy of any agreement signed by any employer that covers work recognized as field construction work that differs in any material way from the working terms and conditions or wages contained in this agreement within five (5) calendar days of such signing.

## ARTICLE TWO
### DURATION, MODIFICATION AND CHANGES

**Section 1. Duration, Modification and Changes:**
This Agreement shall become effective September 1, 2004, and shall continue in full force and effect through June 30, 2008, and thereafter from contract year to contract year, and will apply to all construction work in Alaska to be performed by the Contractors, unless notice is given in writing by the Unions or the Contractors to the other party no less than sixty days prior to the expiration of any such contract period of its desire to modify, change, amend, or terminate this Agreement; and in such case, the Agreement shall be open for modification at the expiration of the contract period within which such notice is given. Upon receipt of said notice, the signatory Union and the Contractors shall commence negotiations within thirty days.

There shall be no retroactivity from the date of ratification by both parties for any wage, fringe or cost related work rules change.

## ARTICLE THREE
### REOPENING IF INVALIDATED BY COURT

In the event that any of the provisions of this Agreement shall be declared by a court of competent jurisdiction to be invalid for any cause, such invalid provisions shall be deemed to be non-existent,

4

and the remainder of the Agreement shall continue in full force and effect. The parties hereto agree that on some mutually agreeable date they will commence negotiations as to such invalidated and other affected portions of this contract.

## ARTICLE FOUR
### HIRING OF CRAFT PERSONS

**Section 1. Requesting Manpower:**
Employers shall hire qualified Craft persons by calling the Union. The employer, when requiring Craft persons for any job, shall notify the Local Union office stating the location, starting time, approximate duration of the job, the type of work to be performed and the number of Craft persons required.

**Section 2. Responsible Representatives:**
To avoid duplication of orders and to provide an orderly hiring procedure, the Employers agree to designate responsible representatives for each project whom the Union shall recognize as the agents of the Employers with authority to hire.

Furthermore, the Union shall be notified as to the names of the authorized representatives and the parties mutually agree that the employment will be made only through such persons designated by the Employers.

**Section 3. Hiring Hall:**
a. The Union signatory hereto shall maintain an exclusive hiring hall and may solicit workers, both union and non-union, for registration to fill requisitions for workers. The Employers reserve the right to reject any job applicants referred by the Union.

b. The Union agrees that there shall be no discrimination on their part against non-union workers in the operation of such hiring hall, and referral of applicants for employment shall in no way be based on or affected by union membership, by-laws, rules, regulations, constitutional provisions, or any other aspect or obligation of union membership, policies or requirements. The employers and the Union agree that there will be no discrimination

5

Exhibit 2
Page 6 of 31.

in hiring or referral of workers due to their race, creed, color, age or sex.

   c. The Contractors and the Unions agree that there will be no discrimination in hiring or referral of applicants due to their race, creed, color, language, age or sex; provided, further that notwithstanding these hiring hall provisions, the Union when requested by an Employer, shall dispatch to allow an Employer to comply with: state or federal affirmative action requirements; any other local, state or federal law; or any reasonable and lawful contractual obligation imposed by an Owner.

### Section 4. Drug-Free and Alcohol-Free Workplace:

   a. **Drug-Free and Alcohol-Free Workplace:** Labor & Management are committed to providing Employees with a drug-free and alcohol-free workplace. It is the goal to protect the health and safety of Employees and to promote a productive workplace, and protect the reputation of Labor and Management and the Employees. Consistent with those goals, the Employer prohibits the use, possession, distribution or sale at its employment sites, of drugs, drug paraphernalia or alcohol. The Union recognizes the Employer's right to develop and implement a drug-screening program. The Employer agrees to pay the cost for such drug screening. The Employer will designate the facility to conduct the drug/alcohol screening. Within the limits permitted by applicable Federal or State laws and/or owner regulations, the Employer has the prerogative to test Employees for drug/alcohol usage, and to refuse employment or terminate those who test positive.

   b. **Drug and Alcohol Screening:** Workers required by the Employer to take a pre-employment drug and alcohol screening will not be on the payroll of the Employer during drug and alcohol screening. If the Employee is put to work while they are awaiting the results they will be paid for time worked. The employer will pay for all drug and alcohol screening.

### Section 5. Referral of Workers:

   a. When placing orders for workers, the Employer may make specific requests for workers from the out-of work list regardless of their position on the list.

   b. Open calls for workers shall be placed by 9:00 a.m., Monday through Friday and be filled from the list in the order in which their name appears, providing they are available, qualified, and willing to work.

   c. Separate lists will be established and maintained for registered apprentice workers and referrals shall be made in rotation recommended by Joint Apprenticeship Committee.

   d. In the event that the referral facilities maintained by the Union are unable to fill the requisition from any Employer for workers within a forty-eight (48) hour period after such requisition is made by the employer (Saturdays, Sundays, and Holidays excepted), the Employer may employ applicants without reference to the referral procedure. In such an event, the Employer will notify the Union of the names and dates of such hiring within forty-eight (48) hours of such hiring.

### Section 6. Joint Hiring Committee:

The parties to this Agreement shall create a Joint Hiring Committee, when needed, composed of not more than two (2) Employers and not more than two (2) Union representatives to supervise and control the operation of the job referral system herein. The Joint Hiring Committee is empowered:

   a. To establish any and all rules and regulations from time to time that it deems advisable for the operation of the job referral plan.

   b. Properly post all rules and regulations, relative to the function of the referral plan, together with provisions of this Agreement at the Union dispatch office, at the employer's office and at the job site.

   c. To hear and determine any and all disputes or grievances arising out of work registrations, work referrals and the preparation

6

7

Exhibit 2
Page 7 of 31

of the referral registration lists. Any applicant or registrant shall have a right to appeal of any dispute or grievance arising out of and relating to the operation or functioning of the job referral plan to the Joint Hiring Committee.

The Joint Hiring Committee shall provide in the rules and regulations of the job referral for an appeal to an impartial umpire whenever the Joint Hiring Committee reaches a deadlock over a dispute. The impartial umpire shall be designated by mutual agreement of the parties and if they shall be unable to agree upon the impartial umpire, the umpire shall be selected in the manner provided under the disputes provision of this Agreement. The authority of the impartial umpire shall be limited to interpreting and applying the rules and regulations of the Joint Hiring Committee. All decisions of the Joint Hiring Committee or the impartial umpire shall be final, binding and conclusive on all parties including applicants.

If any question arises as to the qualifications and competency of an applicant for registration as to special skills, the Joint Hiring Committee shall make the determination. Such determination shall be fair and impartial, without regard to applicant's membership or non-membership in the Union.

In the event that the Joint Hiring Committee determines that an employer has employed an individual in violation of this collective bargaining agreement, the Joint Hiring Committee may impose, as a minimum penalty, that the employer pay to the individual who would have been dispatched to the job, had the procedures of the collective bargaining agreement been followed, the full amount of wages which said individual has lost, together with the payment into the various fringe benefit trusts on behalf of said individual.

**Section 7. State or Federal Law:**
It is not the intent of this Article to in any way violate State or Federal Law or regulation and the development of any such situation shall be cause for immediate negotiations between the signatories to this Agreement to correct the language. In the event that, as a result of a charge or suit against any party to this Agreement (to include any member of the Associated General Contractors of Alaska, or

8

any Employer who adopts and works under this Agreement), any section or provision hereof or the entire Agreement shall be declared or held to be invalid or illegal by any authorized Board or Court, the part, section, provision or the entire Agreement so held or declared invalid or illegal shall forthwith cease to be of further force and effect and in such event either party hereto may, upon not less than thirty (30) days written notice to the other, have the right to open negotiations for the substitution of a new section, sections, or agreement consistent with the decision of the Board or Court.

**Section 8. Hold Harmless – Indemnification:**
The Alaska Regional Council of Carpenters agree to indemnify, defend, and hold harmless the Associated General Contractors of Alaska, Inc., its employees, officers and committee members against any claim or liability arising from or based on the violation of any laws, ordinances, regulations or orders pertaining to workers' residency classification or requirements, the operation of the hiring hall, the referral or workers, and the placement of or refusal to place any individual on the out-of-work list.

### ARTICLE FIVE
### UNION MEMBERSHIP

Membership in the Union shall be a condition of employment beginning with the fourteenth (14th) day following the beginning of such employment, or the effective date of this Agreement, whichever is the later, and employees shall remain members in good standing to retain their employment.

### ARTICLE SIX
### JURISDICTIONAL DISPUTES

Contractors and their subcontractors shall make work assignments on the basis of International Agreement, Decisions of Record and Area Practice. Should a jurisdictional dispute arise, the Contesting Crafts shall meet and attempt to resolve the dispute. If agreement is reached, a jurisdictional dispute will no longer exist and the work will be performed as agreed upon by the Contesting Crafts. If no

9

Exhibit 2
Page 8 of 31

agreement is reached, the work will continue to be performed as originally assigned by the Contractor, and the Contesting Union shall refer the dispute to their respective International Unions. If the International Unions reach agreement, the work shall be performed as agreed upon by the International Unions. Should the International Unions fail to reach agreement, the work shall continue to be performed as originally assigned by the Contractor. There shall be no stoppage or slow down of work because of jurisdictional disputes.

## ARTICLE SEVEN
## GRIEVANCES

Any grievance, complaint, or dispute (except jurisdictional disputes) arising out of this Agreement involving its interpretation or application shall be considered a grievance and subject to resolution under the following procedure, and it is further agreed that until said procedure is exhausted, there shall be no work stoppage or lockout. Both parties pledge their full cooperation in carrying out the procedure outlined.

a. If employees working under this Agreement feel aggrieved by a violation of this Agreement, they shall, within 10 days (5 days in the event of a termination grievance) from the time of their awareness or when they could have been reasonably aware of the alleged violation, notify the Local Union Business Representative in writing.

In the event that dispute, grievance or difference of interpretation arising on the job cannot be satisfactorily adjusted on the job between the representatives of the Union and the Contractor or authorized representative, the same shall be referred to the authorized representative of the Union and the Executive Director of the Associated General Contractors of Alaska, Inc. It is agreed that this settlement shall be reached at the site of the job or at a place mutually agreeable to the parties within seven (7) days. Either party may, in writing, refer the matter to the Board of Conciliation that shall consist of one person appointed by each party. The two persons so appointed shall select a third member. In the event that

10

there is a failure of agreement on the impartial member of the board during a seven (7) day period, the time shall be extended seven (7) days, and the presiding appropriate judiciary authority, will be requested to name a third member. This Board shall meet as soon as possible but in no event later than seven (7) days after the dispute has been referred to them. Any decision of the Board shall be completely within the scope and terms of this Agreement. It may provide retroactivity not exceeding sixty (60) days from date of filing of notice of the dispute with the A.G.C. and shall state the effective date. Decision by the Board shall be rendered within ten (10) days after they hear the dispute, and such decision shall be final and binding upon both parties. Compliance and execution of such decisions shall be made within fourteen (14) days from the date of the decision. It is agreed that the expense of the third member of the Board shall be borne equally by the parties.

## ARTICLE EIGHT
## HOURS OF WORK AND OVERTIME

### Section 1. Hours of Work:
Eight (8) hours shall constitute the normal workday; and forty (40) hours shall constitute the normal workweek. Employees shall receive compensation of one and one-half (1-1/2) times the base rate for any hours worked over eight (8) hours per day or forty (40) hours per week (Monday-Friday); however, the Employer and the Union may mutually agree to establish a regular work week on a particular job of four days per week, ten (10) hours per day, and all work not exceeding ten (10) hours per day or forty (40) hours per week shall be paid at straight time. Nothing in this Article shall be construed as guaranteeing any Employee eight (8) hours of work per day or forty (40) hours of work per week.

### Section 2. Overtime Rates:
Employees shall receive compensation of one and one-half (1-1/2) times the basic rate for work performed on Saturday. Employees shall receive compensation of two (2) times the basic rate for work performed on Sunday, except:

11

Exhibit 2
Page 7 of 31

Where unforeseen delays require Sunday work for timely completion of job, the employee shall receive compensation of one and one-half (1-1/2) times the basic rate.

On any job where all other employees of the contractor or subcontractors at the jobsite and throughout the duration of the job receive one and one-half (1-1/2) times, employees working under this agreement shall receive compensation of one and one-half (1-1/2) times the basic rate.

During the first week of employment the employee is not entitled to overtime until the employee works in excess of (8) hours per day or (40) hours per week. This paragraph shall only apply when the duration of employment is more than one calendar week.

An Employee may choose to use Saturday as a "Make-up Day" (straight time rates) when, through no fault of the contractor, work is not available on a previous straight time day. This provision shall only apply if the entire Carpenter Crew does not work on the previous straight time day.

On a job with a scheduled six-day workweek, an employee who chooses to work a Saturday, who was absent on a previous straight time day on which the Employer made work available may be compensated by the Employer on a straight time basis.

In instances where special working hours are required by an owner or contracting agency, the union agrees that overtime pay will only be paid after (8) hours per day or (40) hours per week or in accordance with the holiday schedule.

Employees shall receive compensation of two (2) times the basic rate for any work performed on holidays. When a shift of a multiple shift operation is started at the basic or at an overtime rate, it shall be completed at that rate.

### Section 3. Sundays and Holidays:

Sundays and Holidays shall always be considered overtime and employees shall receive compensation of two (2) times the basic rate for work performed except as noted in Section 2 above.

### Section 4. Multiple Shifts:

Multiple shifts and their starting and quitting times may be established in accordance with job requirements as determined by the Employer. There shall be no premium for shift work.

### Section 5. Dewatering and Weather Protection:

Dewatering and providing temporary heat and protection shall be worked in accordance with the work week and overtime provisions heretofore established, except that time worked on holidays when no other activities are in progress will be compensated for at the overtime rate of one and one-half (1-1/2) times the basic rate of wages.

### Section 6. Time Worked:

Except as provided in this Article, an Employee is only entitled to pay for actual time worked.

### Section 7. Show Up Guarantee:

a. Workers reporting for work and not put to work shall receive two (2) hours pay at their regular straight time rate unless notified not to report at the end of the previous shift or two (2) hours prior to the start of a shift. Notification may take the form of a telephone answering device, radio broadcast, or other mutually agreed method of notification. Except where such workers live in a camp such notification can be given any time prior to departure from camp. If the shift is started, the worker shall receive at least four (4) hours pay at the regular straight time rate. Where an employee leaves of his/her own volition or is discharged for cause, employee shall be paid for the actual time worked. Reporting pay on overtime days shall be a minimum of two (2) hours at the straight time rate.

b. When an employee completes his/her scheduled shift and is "called out" to perform special work on a casual, incidental or irregular nature, the employee shall receive premium pay in accordance with the proper overtime rate with a minimum guarantee of two (2) hours pay at the employee's straight time rate.

### Section 8. Meals and Meal Periods:

a. An Employer will schedule a one-half (1/2) hour break for a meal period near the midpoint of a shift. An Employee required to

12

13

Exhibit 2
Page 10 of 31

work more than six (6) consecutive hours without a meal break shall be allowed a later meal period of one-half (1/2) hour, and it shall be considered as time worked and paid for at the proper rate.

b. Notwithstanding paragraph (a), an Employee may be required to work more than six (6) consecutive hours without any entitlement to a later meal period or pay for that period when the Employer is engaged in a continuous operation where breaks are difficult to schedule but sufficient lag time normally exists to enable an Employee to consume a meal during the shift. Examples of continuous operations include, but are not limited to: asphalt paving operations, concrete pours, gravel hauls, tide work, piledriving.

c. At no time shall an employee be required to work more than 4 ½ hours without a 10-minute break.

## ARTICLE NINE
## HOLIDAYS

The holiday rate shall apply for work on the following days:

New Year's Day – January 1
Presidents Day – 3rd Monday in February
Memorial Day – Last Monday in May
Independence Day – July 4
Labor Day – 1st Monday in September
Veteran's Day – November 11
Thanksgiving Day – 4th Thursday in November
Christmas Day – December 25

a. If the holiday falls on a Sunday, the Monday following will also be a legal holiday.

b. Notwithstanding any other provision, the Employer and the Union may agree to observe the Holiday on a day other than the State observed holiday if it is 100% mutually agreed to by the Employer and the Employees.

14

However, let it be known that the Union takes no responsibility should the state or federal government choose to enforce the law and require the Contractor to pay overtime for the swap.

## ARTICLE TEN
## WORKING RULES

**Section 1. Working Rules:**

a. Workers shall have a minimum of five (5) minutes to put away tools before quitting time of each shift.

b. Employees shall furnish their own hand tools and walk-ups for drywallers.

c. No Carpenter or Apprentice shall rent, loan, or in any way furnish any automobile, pickup, truck, or other transportation, optical instruments, power tools of any kind, hand levels or squares more than 30 inches in length (except sheetrock square), any ladders, horses, benches or trestles, or any boring equipment over one inch (except expansion bit) or trim knives, siding shears, or similar cutting or shearing tools, patent miter boxes or any other tools and equipment normally furnished by the Contractor, to the Contractor for whom employed.

d. Each Contractor shall furnish warm and adequate shelter for the use of the Carpenters with sufficient room to store tools, dry clothes and eat lunches. Contractor agrees that while such tools and clothing are in the Contractors custody the Contractor will provide for replacement to cover the full value of such tools, which may be lost or damaged because of fire, flood, theft or vandalous acts. Such replacement shall be made within seven (7) days of the loss or with issue of a terminating employee's final check, whichever occurs first.

e. A Carpenter who is laid off shall have adequate time within the hours of the working day in which to pick up, collect, and pack tools and equipment.

f. It shall not be considered a violation of this Agreement where Journeymen Carpenters and Apprentices refuse to work with

15

Exhibit 2
Page 11 of 31

unsafe equipment or work under unsafe conditions. The State of Alaska Occupational Safety and Health Standards shall apply on all jobs where Carpenters are employed.

g. The Contractors shall furnish all required safety equipment on the job site such as hard hats, welding gloves, hood, safety goggles and special type of footwear that may be needed by the Carpenter in performing his duties except for steel-toed shoes and cold weather clothing. Safety equipment shall be returned to the Contractor, or at the termination of employment a reasonable cost for the same will be deducted from wages due.

### Section 2. Foremen:

a. There shall be no desire on the part of the Union to select the Employer's Foremen.

b. Whenever three (3) or more Carpenters are employed on a job, one will be designated Foreman and receive Foreman pay. A Foreman shall not supervise more than eight (8) Carpenters.

c. To prevent duplication and confusion of orders, a worker at no time shall be directly responsible to more than one Foreman or General Foreman.

d. A General Foreman or Superintendent who is a member of the Carpenters Union shall be authorized to supervise up to and including (4) carpenters without being required to appoint a foreman.

### Section 3. Termination:

a. The Employer shall furnish each man discharged a termination slip showing the actual reason for termination.

b. For the purpose of this contract, "cause" as related to discharge for cause, shall include, but is not limited to: incompetence, unexcused absenteeism, disobedience of orders, unsatisfactory performance of duties, being under the influence of alcohol or drugs, failing to have tools in sharp and proper working order, unsafe work practices, and violation of owners' rules imposed upon the Employer; it being understood that such rules shall be posted for the benefit of the Employees. Discharge slips shall contain the specific

16

reason for discharge. A copy of the discharge slip shall be provided to the discharged Employee immediately, and copy shall be mailed or carried to the Union office immediately by the Contractor. Persons discharged and designated in writing as "ineligible for rehire" shall not be dispatched to the Contractor on any subsequent open call.

### Section 4. Pay Day:

The Contractor shall establish a regular weekly payday on which employees shall be paid during working hours. Payday shall not be later than Friday of the following week.

### Section 5. Payment of Wages upon Termination:

It is understood and agreed, however, that when an Employee is laid off, the person's wages become due by the close of business the following day. Employees who quit or are discharged for cause (as defined in Article Ten, Section 3b), the Employer shall mail their check(s) to the Local Union office the following workday. Failure to pay within the prescribed period of time (exclusive of Saturdays, Sundays and Holidays) shall entitle Employee to waiting time of eight (8) hours per day. Employer and Union may agree to waive the time frame stated above when due to unforeseen circumstances.

On remote jobs where payroll facilities are not maintained, the Employer will have the check at the Union offices or in the US mail or other place mutually agreed to within forty-eight (48) hours of termination, Saturdays, Sundays, and holidays excepted.

### Section 6. Payroll Week:

For the purposes of pay, a payroll week is further defined as beginning at 12:01 a.m. Sunday. In regard to "bush" jobs where flight schedules and/or mail delivery may be interrupted, separate arrangements may be consummated by mutual consent or separate agreement.

### Section 7. Itemize Deductions on Paycheck:

The Employer shall itemize deductions on paychecks so employees can determine purposes, for which amounts have been withheld and shall indicate the number of travel time hours, straight time hours, overtime hours and basic rate per hour paid.

17

Exhibit 2
Page 12 of 31

## ARTICLE ELEVEN
## MISCELLANEOUS CONDITIONS

**Section 1. Employer Required Physicals:**
The employer shall pay for all Employer required drug tests, physicals, and immunizations. The employee is not entitled to wages or other pay while engaged in these activities.

**Section 2. Lost-Time and Accidents:**

a. Employees shall immediately, honestly and accurately report all on the job injuries to the Contractor in accordance with the Contractor's policies. Any violation of this requirement is cause for discharge and will be reported to the Union for disciplinary action.

b. The Employer shall notify the Union, as promptly as possible of all lost-time accidents and shall furnish the Union with a copy of the employer's accident report at the time such report is furnished to the insurance company and showing the name of the insurance carrier.

c. Employees injured on the job, provided the injury is reported to the employer, and requiring medical attention, are to be paid for time spent on the first visit to the doctor; and, the doctor determines and certifies that the employee is unable to return to work because of the injury, they shall be paid for the balance of the shift during which the injury occurred. This provision applies to medical attention received during regular working hours only.

**Section 3. Injured Person to Get Priority for Rehire:**
An employee who is required to leave employment because of job-connected injuries shall, upon recovery there from, be given priority of hire by former employer when that employer needs a worker or workers in the injured employee's classification, provided such injured employee:

a. Has a doctor's release.

b. Upon recovery, must take the first available job for which he is qualified.

**Section 4. Change in Policy:**
It is understood that there is no desire on the part of the Union to dictate the business policies of the Contractors, but when the Contractors contemplate a change in policy affecting the welfare of the workers, proper and reasonable notice shall be given to the Union.

**Section 5. Absenteeism:**
The Union agrees that it will actively combat absenteeism and other practices which may hamper the Contractor's operation, and that it will support the Contractors in their effort to eliminate waste and inefficiency, to improve the quality of workmanship and to promote goodwill between the Contractor and the Employees.

**Section 6. Pre-Job Conference:**
For the purpose of allowing a job to run more smoothly, both parties agree to the desirability of a pre-job conference. When a pre-job conference is planned for any project the Union shall be notified and invited to attend such conference.

**Section 7. Work Assignments:**
This agreement covers carpenter, sheetrock work and specialty carpenter work and includes the loading and unloading of barges or other carriers of the carpenters materials and equipment at landing facilities for the contractors work, except that maintenance and production plant work conditions and/or wages and fringe benefits shall be as per separate appropriate agreement.

## ARTICLE TWELVE
## UNION REPRESENTATION

**Section 1. Admission to Job:**
The authorized representative of the Union signatory to this Agreement shall be allowed admission to any job at any time for the purpose of investigating conditions existing on the job. They shall as soon as possible make their presence known to the Contractor's representative in charge of the work. On projects, which are under military guard, the Contractor will cooperate with the Union officials in this regard as far as regulations will permit.

18

19

Exhibit 2
Page 13 of 31

**Section 2. Job Steward:**

a. The Business Representative may appoint a job steward to fill the first or any subsequent open call.

b. In no event shall an Employer discriminate against the Steward or discharge the Steward for activities on or off the job on behalf of the Union. The Steward is subject to the same rules as any other employee. However, in case of reduction in force between comparable carpenters, the Steward shall be retained. The Employer shall notify the Business Agent twenty-four hours before termination of a duly authorized Job Steward, Sundays and Holidays exempted, and shall give the Business Agent the reasons for the contemplated termination.

c. There may be one Steward employed on a job when carpenter work is being performed. The Steward shall be a working journeyman appointed by the Business Representative of the Union from Employees on the job.

d. Stewards shall be allowed time during the workday to conduct such Union duties that cannot be handled at other times. These duties shall be limited to, taking a weekly report of all carpenters employed, checking newly dispatched carpenters, caring for the tools and effects of any injured carpenters, caring for the injured in the absence of an authorized first aid man, notifying the Business Representative of injuries, and transmitting to the Business Representative all complaints and grievances emanating from the job.

### ARTICLE THIRTEEN
### SUBSISTENCE AND QUARTERS

**Section 1. Employer Provided Camp or Suitable Accommodations:**

Unless otherwise agreed with the Union, the Employer shall ensure that the worker who is employed on a project that is 65 miles or more from the U.S. Post Office in either Fairbanks or Anchorage or is inaccessible by road in a 2-wheel drive vehicle and who is not a domiciled resident of the locality of the project shall receive meals

20

and lodging. Lodging shall be in accordance with all applicable state and federal laws. The Union will be notified of any meals and lodging arrangements before dispatch or at the pre-job conference.

**Section 2. Per Diem:**

Employers are encouraged to use commercial facilities and lodges, however, when such facilities are not available, per diem in lieu of room and lodging may be paid at the basic rate of $75.00 per day or part thereof, the worker is employed on the project. Per Diem shall not be allowed on projects West of Livengood on the Elliot Highway, at Mile 0 on the Dalton Highway to the North Slope of Alaska, North of Mile 20 on the Taylor Highway, East of Chicken, Alaska on the Top of the World Highway and South of Tetlin Junction to the Alaska-Canadian Border.

For purposes of this Article, the term "domiciled resident," means a person living within 65 miles of the project, or in the case of a highway project, the mid-point of the project, for at least 12 consecutive months prior to the award of the project.

**Section 3. Remote Area Residents:**

Requests for bona fide residents of the vicinity immediately accessible to the job site in a remote area shall be honored in accordance with the place of the local resident upon the registration list in relation to other registrants in the same area. Residence for the purpose of this section shall mean that the individual shall have resided in the State of Alaska for a period of twelve (12) months, and in the local area for a period of twelve (12) months prior to the bid award. The Term "local area" shall be defined as within 65 miles of the mid point of the project. The individual must provide documentary proof of residency to the local union. The Union will provide whatever documentation it has to the Employer upon request.

**Section 4. Sanitation:**

The Contractor agrees to furnish and maintain in reasonable sanitary condition the facilities and services required.

**Section 5. Board and Lodging for Injured Employees:**

The Contractors agree to furnish, without charge board and lodging to those employees who through no fault of their own are unable

21

Exhibit 2
Page 14 of 31

to work or who sustain job-connected injuries not serious enough to require hospitalization, but which render an employee unable to work, for each day of inability to work, but in no event shall this period exceed seven (7) days.

If the question arises as to a worker's ability to return to work, it shall be settled by a report of licensed medical authority whose decision shall be final and controlling.

## ARTICLE FOURTEEN
## TRANSPORTATION, TRAVEL EXPENSE
## AND TRAVEL TIME

### Section 1. Transportation To The Site:
When persons are recruited, transportation and actual reasonable expenses of board and lodging while en route shall be borne or reimbursed by the employer.

### Section 2. Transportation from the Site:
At the termination of the contract, project, or season the Employer will pay for transportation, actual expenses of board and lodging while en route to the point of hire. If the employee quits or has been discharged for drunkenness, drug abuse or violation of owner's rules imposed upon the Employer, the above provision does not apply. All employees who are requested by name shall be entitled to return transportation to the point of hire regardless of the reason for termination, unless terminated for drunkenness, drug abuse or violation of owner's rules imposed upon the Employer. Employer furnished transportation to the point of hire shall be provided all persons required to leave the job for medical reasons sufficient to require extended medical care or hospitalization. The employers will make an earnest effort to avoid the necessity of employees waiting for transportation to or from the jobsite. When employees are transported in aircraft, such aircraft shall be operated, maintained, and have a certificate of air worthiness and the pilot shall be licensed and certificated all in accordance with applicable laws and regulations.

22

### Section 3. Established Point of Pickup:
Where there is an established point of pickup, or the Employer deems it necessary to transport an Employee by boat, airplane, or other Employer supplied conveyance, work shall begin at the site of the work unless it takes more than 1/2 hour to transport persons, either to or from the pickup point. In that event, round-trip travel time exceeding one (1) hour shall be considered as time worked and compensation computed on the basis of the travel time consumed, going from and returning to the point of pickup. When furnished, transportation from pickup point to work site and the return from work site to pickup point shall be by the most expeditious route and means possible; such transportation shall be safe and lawful and the persons shall be seated in reasonable comfort and protected from the elements.

### Section 4. Death and Return of Deceased:
In the event of the death of an Employee, the Contractor shall, in the absence of any law or authority prohibiting the same, prepare and transport the remains to point of hire or to such other point equivalent or less distance as the next of kin may elect.

## ARTICLE FIFTEEN
## TRANSPORTATION OF TOOLS
## AND PERSONAL EFFECTS

### Section 1. Transportation of Tools:
Transportation costs for employer required tools from point of hire to the jobsite and return shall be borne by the Employer. Personal effects shall be transported at no expense to the employee up to the maximum allowed as baggage by a common commercial carrier. When an employee is returning to point of hire, personal effects and tools shall be assigned on the same carrier as used by the employee, or the employee shall receive standby time at the rate of eight (8) hours per day at the straight time rate until personal effects and/ or tools arrive at the point of hire, unless the delay is through no fault of the employer. The Union and the Employer may arrive at an equitable settlement in lieu of further standby time in the event they are lost en route.

23

Exhibit 2
Page 15 of 31

Note 1. When an employee voluntarily terminates and the Employer is unable to arrange for personal effects and tools to be assigned to the same carrier, the Employer shall have twenty-four (24) hours from time of termination before the above goes into effect. The Contractor shall reimburse the employee for the full prior agreed value of Employer required tools lost while in the care, custody, or control of an air carrier while an employee is traveling pursuant to this Section.

**Section 2. Personal Effects:**
The Employer also will be responsible in case of fire or flood for all the personal effects of Employees in an amount not to exceed $1,000.00 each in all Employers' camps or in camps arranged for by the Employer other than those camps owned or operated by the Government.

## ARTICLE SIXTEEN
## FIRST AID AND SAFETY

Safety, First Aid and Sanitation shall conform to the minimums provided by Federal, State and Municipal statutes, codes and regulations.

    a.  All foremen shall be required to have a current First Aid Card. All Carpenters, especially stewards, are encouraged to have a current First Aid Card.

    b.  An attendant other than the driver shall accompany workers whose injuries require the use of a stretcher to the hospital.

    c.  Immediate transportation must be provided for seriously ill or injured employees and such transportation must have precedence over all other transportation under the control of the firm or party upon whose operation the accident occurs (such transportation to be the most convenient point where the ill or injured employee can receive recognized medical attention).

24

## ARTICLE SEVENTEEN
## MANAGEMENT RIGHTS

The Employer retains all discretionary and decision-making rights not specifically limited by the terms of this Agreement. These rights include, but are not limited to, the following: directing the jobsite work force, including hiring of personnel; selection of all supervisory employees; promotions, transfers, layoffs, discharge of employees for just cause; selecting material and equipment to be used or installed; utilizing any work methods, procedures, techniques of construction or labor-saving devices or machines; establishing jobsite rules and regulations; determining when overtime work is required and who shall perform overtime work; designation of work to be subcontracted; selection of all subcontractors; and determining the number of men and craft supervisory personnel required to perform the work. The employer shall be the sole judge of an employee's ability, competence and performance.

25

Exhibit 2
Page 16 of 31

### ARTICLE EIGHTEEN
### SPECIAL CONDITIONS

In order to preserve work for the union members and make the Employers who become signatory to this Agreement more competitive on all projects or on specific projects or on projects in a locality, the Local Unions signatory to this Agreement under whose jurisdiction the work falls, and the Employers doing business in the locality or on the project affected by the special condition, may mutually agree to put into effect special wages and conditions for specific localities or projects for a specific period of time.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives.

Dated this ___9/21/04___.


ASSOCIATED GENERAL CONTRACTORS OF ALASKA

_____
Richard Cattanach, Executive Director

ALASKA REGIONAL COUNCIL OF CARPENTERS

_____
John Palmatier, Executive Secretary-Treasurer


26


## SCHEDULE "A"

TO THE 2004 - 2008 AGREEMENT BETWEEN

THE ASSOCIATED GENERAL CONTRACTORS
OF ALASKA, INC.

and

ALASKA REGIONAL COUNCIL OF CARPENTERS
CARPENTERS LOCAL UNION 1243
NORTH OF 63° PARALLEL


Exhibit 2
Page 17 of 31

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | Contributions | 1 |
| Section 1 | Health and Security | 1 |
| Section 2 | Pension | 1 |
| Section 3 | Apprenticeship and Training | 2 |
| Section 4 | Carpenters Advancement Fund | 2 |
| Section 5 | Construction Industry Progress Fund | 2 |
| Section 6 | Contributions to Trusts | 3 |
| Section 7 | Delinquent Contributions to Trusts | 3 |
| Section 8 | Dues Check-Off | 4 |
|  |  |  |
| ARTICLE II | Wages | 4 |
| Section 1 | Journeyman | 4 |
| Section 2 | Foreman | 5 |
| Section 3 | Apprentices | 5 |
|  |  |  |
|  | Signatures | 6 |

i

Exhibit 2
Page 18 of 31

SCHEDULE "A"
Carpenters Local Union 1243
North of 63° Parallel
Fringe Benefits, Classifications and Wage Rates

ARTICLE I
CONTRIBUTIONS

**Section 1. Health and Security**

The Employers are signatories to a trust agreement known as the Northern Alaska Carpenters Health and Security Plan covering the Journeyman Carpenters and Apprentices in that portion of the State of Alaska lying north of latitude 63 degrees, made and entered into between the Associated General Contractors of Alaska, Inc., and Local Union 1243 of the United Brotherhood of Carpenters and Joiners of America (and applicable to the individual Employers thereto subscribing) while working within that jurisdiction.

Effective September 1, 2004, it is understood and agreed that under the provisions thereof, the Employers will contribute four dollars and fifty ($4.50) cents to the trust fund for each compensable hour accredited to Journeyman Carpenters and Apprentices in their employ for the purpose of group insurance as specified in said trust agreement. It is understood that the contributions are to be computed solely on the total number of compensable hours and are not to be included in wages or computation of overtime.

**Section 2. Pension**

The Employers are signatories to a trust agreement known as the Northern Alaska Carpenters Defined Contribution Pension Plan covering the Journeyman Carpenters and Apprentices in that portion of the State of Alaska lying north of latitude 63 degrees, made and entered into between the Associated General Contractors of Alaska, Inc., and Local Union 1243 of the United Brotherhood of Carpenters and Joiners of America (and applicable to the individual Employers thereto subscribing) while working within that jurisdiction.

Effective September 1, 2004, the employer shall contribute eight dollars and forty-one ($8.41) cents to said defined contribution plan

ii

1

Exhibit 2
Page 19 of 31

for each compensable hour accredited to each Journeyman Carpenter in their employ. See Schedule "A" for Apprentice Contribution rate. Said contributions shall not be included in wages or computation of overtime.

### Section 3. Apprenticeship and Training

The Employers are signatories to a trust agreement known as Fairbanks Carpenters Apprentice and Training Fund, covering Journeyman Carpenters and Apprentices in Alaska, North of the 63rd parallel, made and entered into on March 15, 1968, between the Associated General Contractors of Alaska, Inc., and the Carpenters Local Union 1243 (and applicable to the individual Employers thereto subscribing) while working within that jurisdiction.

Effective September 1, 2004 the Employers shall contribute sixty ($0.60) cents for each compensable hour accredited to each Journeyman Carpenter in their employ. See Article II, Section 3 for Apprentice Contribution rate. Said contributions shall not be included in wages or computation of overtime.

### Section 4. Carpenters Advancement Fund

Labor and Management recognize the need for skill, safety and competitive advancement within the construction industry. As such, we agree to meet at a date within 90 days of the 7/1/2005 renewal date of this Agreement to discuss the implementation of a Carpenters Advancement Fund.

### Section 5. Construction Industry Progress Fund

Effective September 1, 2004, the Employers agree to remit ten ($0.10) cents per hour for each Employee to go the Construction Industry Progress Fund. The ten ($0.10) cents per hour shall go towards promoting and supporting stability, long term construction programs and adequate funding for public works projects on the state and local government level, to assure minimal governmental interference in free enterprises through the regulatory process, to support secondary and post-secondary vocational programs to create a competitive educated workforce, and to cooperate with AGC Safety, Inc., in their program to improve working conditions and safety records. The deductions will continue without interruption

2

and will be forwarded to CIPF's agent. Such deductions shall be transmitted to CIPF's agent within ten (10) days following the end of each calendar month.

### Section 6. Contributions to Trusts

Health and Security, Pension and Apprenticeship and Training Fund contributions shall be due and payable monthly on a day determined by the Trust. (Date may be changed by obtaining prior consent from the Trustees and forwarded to the Union by the Trustees.) If the Employer fails to make timely payment, said Employer shall be subject to penalties prescribed in each of the trust documents. Should it become necessary for the Trustees to take legal action to enforce the payment of contributions from a delinquent Employer, the Employer shall be liable for all court costs and reasonable attorney's fees.

### Section 7. Delinquent Contributions to Trusts

If the Employer has failed to pay contributions to the retirement, defined contribution, or health trusts for a period of two months, or if an Employer is delinquent for the second time for a period of at least one month within a twelve (12) month period of their first delinquency, then the Union may strike the Employer, in addition the Union shall not dispatch workmen to that Employer, and the Union shall notify all prime contractors employing the identified delinquent Employer. If the Employer makes satisfactory arrangements with the Administrator to satisfy the debt, which arrangement may include the posting of a bond or other security, the making of weekly contributions, or any combination of the above, then the Administrator may advise the Union that work persons may be dispatched to the Employer. If the Employer contests the amount of contributions due and owing, the Employer may request an audit by the trust auditors, which would proceed as soon as possible. If the Employer is found to be delinquent then the Employer shall pay the total cost of the audit. The Employer will cooperate fully in the audit and during the audit no craft persons shall be dispatched to the job.

Note 1. The total employer remittance starting September 1, 2004 shall be thirteen dollars and sixty-one ($13.61) cents for each compensable hour. All remittances shall be combined in a single

3

Exhibit 2
Page 20 of 31

combined form and remitted in a single payment to the office of the administrator selected by the Trustees.

### Section 8. Dues Check-off

The Employers agree to deduct from the wages of each employee a percentage of the employee's gross weekly earnings as approved by the Alaska Regional Council of Carpenters, provided the employee has executed a written assignment calling for such deduction. If an Employer transfers an employee to a subsidiary and/or sister company, or if an employee is transferred by the Employer, it is agreed that for purposes of Union dues and/or assessments, the employee need not execute a new written assignment calling for such deduction. Consequently, the deductions will continue without interruption and will be forwarded to the Union by the Employer who is then paying the employee. Such deductions shall be transmitted to the Union monthly on a day determined by the Trust. The Union shall supply appropriate transmittal forms to each Employer.

The above deductions shall be made by the Employers so long as such payments are deemed in compliance with applicable law, and the Union agrees to indemnify the Employer for any litigation costs, expenses, or liabilities which an Employer may incur from compliance with this provision.

### ARTICLE II
### WAGES

### Section 1. Journeyman

Effective September 1, 2004

| | |
|---|---|
| Journeyman Carpenter/Lather/Drywall Applicator | $31.40 |
| Fire or Flood Repair Work | $31.98 |

Effective July 1, 2005, an increase of one dollar and thirty-five ($1.35) cents to be determined by the members.

Effective July 1, 2006, an increase of one dollar and thirty-nine ($1.39) cents. Fifty ($0.50) cents to Health and Security (if needed) and eight-nine ($0.89) cents to be determined by the members.

4

Effective July 1, 2007, an increase of one dollar and forty-three ($1.43) cents. Fifty ($0.50) cents to Health and Security (if needed) and ninety-three ($0.93) cents to be determined by the members.

### Section 2. Foreman

**GENERAL FOREMAN:** 25% above Journeymen Carpenters Rate.

**FOREMAN:** 15% above Journeymen Carpenters Rate.

**WORKING FOREMAN:** 12-1/2% above Journeymen Carpenters Rate.

### Section 3. Apprentices

a.  Apprentices shall be paid at the following rates of wages and fringes.

| Level | Hours | % | Wage | H&S | PEN | APPR | CIPF | TOTAL |
|---|---|---|---|---|---|---|---|---|
| I | 0001-0875 | 60 | $18.84 | $4.50 | $3.81 | $5.20 | $0.10 | $32.45 |
| II | 0876-1750 | 65 | $20.41 | $4.50 | $3.81 | $5.20 | $0.10 | $34.02 |
| III | 1751-2625 | 70 | $21.98 | $4.50 | $4.81 | $4.20 | $0.10 | $35.59 |
| IV | 2626-3500 | 75 | $23.55 | $4.50 | $4.81 | $4.20 | $0.10 | $37.16 |
| V | 3501-4375 | 80 | $25.12 | $4.50 | $5.81 | $3.20 | $0.10 | $38.73 |
| VI | 4376-5250 | 85 | $26.69 | $4.50 | $5.81 | $3.20 | $0.10 | $40.30 |
| VII | 5251-6125 | 90 | $28.26 | $4.50 | $6.81 | $2.20 | $0.10 | $41.87 |
| VIII | 6125-7000 | 95 | $29.83 | $4.50 | $6.81 | $2.20 | $0.10 | $43.44 |

b.  It is agreed that this Article may be reopened at any period of this Agreement, provided it is mutually agreed that the Carpenter's apprenticeship program may be improved. Both parties agree that they will carry out and promulgate the apprenticeship program.

c.  No person shall be employed as an apprentice under this Agreement unless the Union has an established Apprenticeship Training Program. The Contractors agree that they will hire the apprentices as recommended by the Joint Apprenticeship committee and no apprentice shall be terminated before consulting the Union or Joint Committee.

d.  Apprentices shall be utilized as determined by the Contractor. One apprentice shall be employed after three (3) journeymen are on the job, but in no case shall there be less than

5

Exhibit ___2____
Page _21_ of _31_

one apprentice out of every five (5) craftsmen when available. At
no time shall apprentices be employed in a ratio greater than one
apprentice for each journeyman on the job, unless approved by the
Joint Apprenticeship Committee.

IN WITNESS WHEREOF, the parties have caused this Agreement
to be executed by their authorized representatives.

Dated this _____9/21/04_____.

ASSOCIATED GENERAL CONTRACTORS OF ALASKA

_____
Richard Cattanach, Executive Director

ALASKA REGIONAL COUNCIL OF CARPENTERS

_____
John Palmatier, Executive Secretary-Treasurer

6

## SCHEDULE "A"

TO THE 2004 - 2008 AGREEMENT BETWEEN

THE ASSOCIATED GENERAL CONTRACTORS
OF ALASKA, INC.

and

ALASKA REGIONAL COUNCIL OF CARPENTERS
CARPENTERS LOCAL UNION 1281 AND 2247
SOUTH OF 63° PARALLEL

Exhibit 2
Page 22 of 31

**TABLE OF CONTENTS**

Page

ARTICLE I  Contributions ...................................................1
    Section 1  Health and Security .........................................1
    Section 2  Pension and Training .......................................1
    Section 3  Carpenters Advancement Fund.............................1
    Section 4  Construction Industry Progress Fund.....................2
    Section 5  Contributions to Trusts ...................................2
    Section 6  Delinquent Contributions to Trusts ......................3
    Section 7  Dues Check-off...............................................3

ARTICLE II  Wages .........................................................4
    Section 1  Journeyman...................................................4
    Section 2  Foreman .....................................................4
    Section 3  Apprentices..................................................4

            Signatures .....................................................6

i

Exhibit  Z
Page 23 of 31

**SCHEDULE "A"**
**Carpenters Local Union 1281 and 2247**
**South of 63° Parallel**
**Fringe Benefits, Classifications and Wage Rates**

**ARTICLE I**
**CONTRIBUTIONS**

**Section 1. Health and Security**

The Employers are signatories to a trust agreement, between the Associated General Contractors of Alaska, Inc., and the Alaska Regional Council of Carpenters (and applicable to the individual Employers thereto subscribing), known as the Southern Alaska Carpenters Health and Security Fund covering Journeyman Carpenters and Apprentices in Alaska.

Effective September 1, 2004, it is understood and agreed that under the provisions thereof, the Employers will contribute five dollars and fifteen ($5.15) cents to the trust fund for each compensable hour accredited to Journeyman Carpenters and Apprentices in their employ for the purpose of group insurance as specified in said trust agreement. It is understood that the contributions are to be computed solely on the total number of compensable hours and are not to be included in wages or computation of overtime.

**Section 2. Pension and Training**

The Contractors and the Unions signatory hereto further agree that effective July 1, 2002 contributions of four dollars and forty ($4.40) cents per compensable hour shall be made to the Southern Alaska Carpenters Retirement Fund and effective July 1, 2003 three dollars and fifty ($3.50) cents per compensable hour to the Southern Alaska Carpenters Defined Contribution Pension Fund and effective July 1, 2000 that sixty ($0.60) cents per compensable hour shall be remitted to maintain the existing Apprenticeship and Training Fund while working within that jurisdiction.

**Section 3. Carpenters Advancement Fund**

Effective September 1, 2004, the Employers agree to deduct from the wages of each Employee five ($0.05) cents per hour to go to

ii

1

Exhibit 2
Page 24 of 31

the Carpenters Advancement Fund. The Contractor shall match the five ($0.05) cents per hour to go towards programs to advance the Alaska Construction Industry. The deductions will continue without interruption and will be forwarded to the Union's agent, Southern Alaska Carpenters Trust Funds, by the Employer who is then paying the Employee while working within that jurisdiction. Such deductions shall be transmitted to the Union monthly on a day determined by the Trust. Appropriate transmittal forms shall be supplied to each Employer by the Union or its agent.

## Section 4. Construction Industry Progress Fund

Effective September 1, 2004, the Employers agree to remit ten ($0.10) cents per hour for each Employee to go to the Construction Industry Progress Fund (CIPF). The ten ($0.10) cents per hour shall go towards promoting and supporting stability, long term construction programs and adequate funding for public works projects on the state and local government level, to assure minimal governmental interference in free enterprises through the regulatory process, to support secondary and post-secondary vocational programs, to create a competitive educated workforce, and to cooperate with AGC Safety, Inc., in their program to improve working conditions and safety records. The deductions will continue without interruption and will be forwarded to CIPF's agent. Such deductions shall be transmitted to CIPF's agent within fifteen (15) days following the end of each calendar month.

## Section 5. Contributions to Trusts

Health and Security, Pension and Apprenticeship and Training Fund contributions shall be due and payable monthly on a day determined by the Trust. (Date may be changed by obtaining prior consent from the Trustees and notification to the Union by the Trustees.) If the Employer fails to make timely payment, said Employer shall be subject to penalties prescribed in each of the trust documents. Should it become necessary for the Trustees to take legal action to enforce the payment of contributions from a delinquent Employer, the Employer shall be liable for all court costs and reasonable attorney's fees.

2

## Section 6. Delinquent Contributions to Trusts

If the Employer has failed to pay contributions to the retirement, defined contribution, or health trusts for a period of two months, or if an Employer is delinquent for the second time for a period of at least one month within a twelve (12) month period of their first delinquency, then the Union may strike the Employer, in addition the Union shall not dispatch workmen to that Employer, and the Union shall notify all prime contractors employing the identified delinquent Employer. If the Employer makes satisfactory arrangements with the Administrator to satisfy the debt, which arrangement may include the posting of a bond or other security, the making of weekly contributions, or any combination of the above, then the Administrator may advise the Union that work persons may be dispatched to the Employer. If the Employer contests the amount of contributions due and owing, the Employer may request an audit by the trust auditors, which would proceed as soon as possible. If the Employer is found to be delinquent then the Employer shall pay the total cost of the audit. The Employer will cooperate fully in the audit and during the audit no work persons shall be dispatched to the job.

## Section 7. Dues Check-off

The Employers agree to deduct from the wages of each employee a percentage of the employee's gross weekly earnings as approved by the Alaska Regional Council of Carpenters, provided the employee has executed a written assignment calling for such deduction. If an Employer transfers an employee to a subsidiary and/or sister company, or if an employee is transferred by the Employer, it is agreed that for purposes of Union dues and/or assessments, the employee need not execute a new written assignment calling for such deduction. Consequently, the deductions will continue without interruption and will be forwarded to the Union by the Employer who is then paying the employee. Such deductions shall be transmitted to the Union monthly on a day determined by the Trust. The Union shall supply appropriate transmittal forms to each Employer.

The above deductions shall be made by the Employers so long as such payments are deemed in compliance with applicable law, and the Union agrees to indemnify the Employer for any litigation

3

Exhibit 2
Page 25 of 31

costs, expenses, or liabilities which an Employer may incur from compliance with this provision.

## ARTICLE II
## WAGES

### Section 1. Journeyman

Effective September 1, 2004

Journeyman Carpenter/Lather/Acoustical    $29.08

Effective July 1, 2005, an increase of one dollar and seventy-one ($1.71) cents. Sixty ($0.60) cents to Health and Security (if needed) and one dollar and eleven ($1.11) cents to be determined by the members.

Effective July 1, 2006, an increase of one dollar and seventy-eight ($1.78) cents. Sixty ($0.60) cents to Health and Security (if needed) and one dollar and eighteen ($1.18) cents to be determined by the members.

Effective July 1, 2007, an increase of one dollar and eighty-five ($1.85) cents. Sixty ($0.60) cents to Health and Security (if needed) and one dollar and twenty-five ($1.25) cents to be determined by the members.

### Section 2. Foreman

**GENERAL FOREMAN:** 25% above Journeymen Carpenters Rate.

**FOREMAN:** 15% above Journeymen Carpenters Rate.

**WORKING FOREMAN:** 12-1/2% above Journeymen Carpenters Rate.

### Section 3. Apprentices

a.   Apprentices shall be paid at the following rates of wages and fringes.

4

| Level | Hours | % | Wage | H&S | PEN | APPR | CAF | CIPF | TOTAL |
|-------|-------|-----|--------|-------|-------|-------|--------|--------|---------|
| I | 0001-0875 | 60 | $17.45 | $5.15 | $3.30 | $5.20 | $0.10 | $0.10 | $31.30 |
| II | 0876-1750 | 65 | $18.90 | $5.15 | $3.30 | $5.20 | $0.10 | $0.10 | $32.75 |
| III | 1751-2625 | 70 | $20.36 | $5.15 | $4.30 | $4.20 | $0.10 | $0.10 | $34.21 |
| IV | 2626-3500 | 75 | $21.81 | $5.15 | $4.30 | $4.20 | $0.10 | $0.10 | $35.66 |
| V | 3501-4375 | 80 | $23.26 | $5.15 | $5.30 | $3.20 | $0.10 | $0.10 | $37.11 |
| VI | 4376-5250 | 85 | $24.72 | $5.15 | $5.30 | $3.20 | $0.10 | $0.10 | $38.57 |
| VII | 5251-6125 | 90 | $26.17 | $5.15 | $6.30 | $2.20 | $0.10 | $0.10 | $40.02 |
| VIII | 6126-7000 | 95 | $27.63 | $5.15 | $6.30 | $2.20 | $0.10 | $0.10 | $41.48 |

b.   It is agreed that this Article may be reopened at any period of this Agreement, provided it is mutually agreed that the Carpenter's apprenticeship program may be improved. Both parties agree that they will carry out and promulgate the apprenticeship program.

c.   No person shall be employed as an apprentice under this Agreement unless the Union has an established Apprenticeship Training Program. The Contractors agree that they will hire the apprentices as recommended by the Joint Apprenticeship committee and no apprentice shall be terminated before consulting the Union or Joint Committee.

d.   Apprentices shall be utilized as determined by the Contractor. One apprentice shall be employed after three (3) journeymen are on the job, but in no case shall there be less than one apprentice out of every five (5) craftsmen when available. At no time shall apprentices be employed in a ratio greater than one apprentice for each journeyman on the job, unless approved by the Joint Apprenticeship Committee.

5

Exhibit   Z
Page   26   of   31

IN WITNESS WHEREOF, the parties have caused this Agreement
to be executed by their authorized representatives.

Dated this ___9/21/04___ .

ASSOCIATED GENERAL CONTRACTORS OF ALASKA

Richard Cattanach, Executive Director

ALASKA REGIONAL COUNCIL OF CARPENTERS

John Palmatier, Executive Secretary-Treasurer

**RESIDENTIAL, PRIVATE WORKS
AND LIGHT COMMERCIAL**

**ADDENDUM**

**TO THE 2004 – 2008 AGREEMENT BETWEEN**

**THE ASSOCIATED GENERAL
CONTRACTORS OF ALASKA, INC.**

**and**

**ALASKA REGIONAL COUNCIL
OF CARPENTERS**

**and**

**ITS AFFILIATED LOCAL UNIONS**

6

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| Purpose | | I |
| ARTICLE I | Adoption of Master Labor Agreement | I |
| ARTICLE II | Coverage | I |
| ARTICLE III | Residential Construction | I |
| Section 1 | Scope | I |
| Section 2 | Wage Classifications – Wages and Fringe Benefits | 2 |
| | a. Northern Carpenters Local 1243 Journeyman | 2 |
| | b. Northern Carpenters Local 1243 Apprentice | 2 |
| | c. Southern Carpenters Local 1281 and 2247 Journeyman | 2 |
| | d. Southern Carpenters Local 1281 and 2247 Apprentice | 2 |
| | e. Annual Increases to Wages and/or Fringe Benefits | 2 |
| ARTICLE IV | Light Commercial and Tenant Improvements | 2 |
| Section 1 | Scope | 2 |
| Section 2 | Wage Classifications – Wages and Fringe Benefits | 2 |
| | a. Northern Carpenters Local 1243 Journeyman | 3 |
| | b. Northern Carpenters Local 1243 Apprentice | 3 |
| | c. Southern Carpenters Local 1281 and 2247 Journeyman | 3 |
| | d. Southern Carpenters Local 1281 and 2247 Apprentice | 3 |
| | e. Annual Increases to Wages and/or Fringe Benefits | 3 |
| Signatures | | 4 |

i

Exhibit 2
Page 28 of 31

## PURPOSE

The purpose of this addendum is to retain or recapture privately funded construction projects for the Union sector of the construction industry.

## ARTICLE I
## ADOPTION OF MASTER LABOR AGREEMENT

The parties incorporate by reference, as part of this agreement, all terms and conditions of the September 1, 2004, - June 30, 2008 Labor Agreement between the Associated General Contractors of Alaska, Inc., and the Alaska Regional Council of Carpenters and its Affiliated Local Unions, except as hereinafter modified by this Agreement.

## ARTICLE II
## COVERAGE

This Addendum shall apply to all residential construction, privately funded street and utility work; privately funded site work; and privately funded light commercial, tenant improvements, rehabilitation and renovation work as defined herein within the jurisdiction of the local union in the State of Alaska. This Addendum does not apply to any heavy, highway, utility, or building (other than residential) project covered by the Davis-Bacon Act or Title 36 Alaska Statutes.

## ARTICLE III
## RESIDENTIAL CONSTRUCTION

**SECTION 1. Scope.**
"Residential construction" includes all work in connection with construction, alteration, or repair of residential units. "Residential Units" includes single family dwellings, duplexes through row houses, townhouses and apartments not to exceed four habitable stories. Residential construction does not include motels, hotels,

Exhibit 2
Page 29 of 31

or any work not performed or directly related to work performed within the property lines of a residential unit.

## SECTION 2. Wage Classifications - Wages and Fringe Benefits.

a. Northern Carpenters Local 1243 North of 63° Parallel.

| | | |
|---|---|---|
| Wage: $21.98 | Pension: | $4.40 |
| Health/Security: $4.50 | App/Tng: | $0.60 |

b. Apprentice wages and fringe contributions shall be as indicated below and at no time shall they exceed Journeyman's.

| Level | Hours | % | Wage | H&S | PEN | APPR | TOTAL |
|---|---|---|---|---|---|---|---|
| I | 0001-0875 | 60 | $18.84 | $4.50 | $3.00 | $2.00 | $28.34 |
| II | 0876-1750 | 65 | $20.41 | $4.50 | $3.00 | $2.00 | $29.91 |
| III | 1751-2625 | 70 | $21.98 | $4.50 | $3.50 | $1.50 | $31.48 |
| IV | 2626-3500 | 75 | $21.98 | $4.50 | $3.50 | $1.50 | $31.48 |
| V | 3501-4375 | 80 | $21.98 | $4.50 | $4.00 | $1.00 | $31.48 |
| VI | 4376-5250 | 85 | $21.98 | $4.50 | $4.00 | $1.00 | $31.48 |
| VII | 5251-6125 | 90 | $21.98 | $4.50 | $4.40 | $0.60 | $31.48 |
| VIII | 6126-7000 | 95 | $21.98 | $4.50 | $4.40 | $0.60 | $31.48 |

c. Southern and Southeast Carpenters Local 1281 and 2247 South of 63° Parallel.

| | | |
|---|---|---|
| Wage: $20.36 | Pension: | $4.40 |
| Health/Security: $5.15 | App/Tng: | $0.60 |

d. Apprentice wages and fringe contributions shall be as indicated below and at no time shall they exceed Journeyman's.

| Level | Hours | % | Wage | H&S | PEN | APPR | TOTAL |
|---|---|---|---|---|---|---|---|
| I | 0001-0875 | 60 | $17.45 | $5.15 | $3.00 | $2.00 | $27.60 |
| II | 0876-1750 | 65 | $18.90 | $5.15 | $3.00 | $2.00 | $29.05 |
| III | 1751-2625 | 70 | $20.36 | $5.15 | $3.50 | $1.50 | $30.51 |
| IV | 2626-3500 | 75 | $20.36 | $5.15 | $3.50 | $1.50 | $30.51 |
| V | 3501-4375 | 80 | $20.36 | $5.15 | $4.00 | $1.00 | $30.51 |
| VI | 4376-5250 | 85 | $20.36 | $5.15 | $4.00 | $1.00 | $30.51 |
| VII | 5251-6125 | 90 | $20.36 | $5.15 | $4.40 | $0.60 | $30.51 |
| VIII | 6126-7000 | 95 | $20.36 | $5.15 | $4.40 | $0.60 | $30.51 |

e. On July 1st, 2005, 2006, and 2007, increases to wages and fringe benefits will be computed at 70% of Journeyman's economic package minus Health & Security.

2

## ARTICLE IV
## LIGHT COMMERCIAL AND TENANT IMPROVEMENTS

### SECTION 1. Scope.

"Light commercial" includes all work in connection with the new construction of privately funded commercial buildings with an area equal to or less than 30,000 square feet within the Municipality of Anchorage, the city of Fairbanks and the Fairbanks North Star Borough and 10,000 square feet in the remainder of the State.

"Tenant improvements" includes all work performed under a contract on or in a new or existing private commercial structure under the direction or control of a tenant or owner occupying a portion of that structure with the same square footage restrictions as above.

### SECTION 2. Wage Classifications - Wages and Fringe Benefits.

a. Northern Carpenters Local 1243 North of 63° Parallel.

| | | |
|---|---|---|
| Wage: $25.12 | Pension: | $6.40 |
| Health/Security: $4.50 | App/Tng: | $0.60 |

b. Apprentice wages and fringe contributions shall be as indicated below and at no time shall they exceed Journeyman's.

| Level | Hours | % | Wage | H&S | PEN | APPR | TOTAL |
|---|---|---|---|---|---|---|---|
| I | 0001-0875 | 60 | $18.84 | $4.50 | $2.80 | $4.20 | $30.34 |
| II | 0876-1750 | 65 | $20.41 | $4.50 | $2.80 | $4.20 | $31.91 |
| III | 1751-2625 | 70 | $21.98 | $4.50 | $3.80 | $3.20 | $33.48 |
| IV | 2626-3500 | 75 | $23.55 | $4.50 | $3.80 | $3.20 | $35.05 |
| V | 3501-4375 | 80 | $25.12 | $4.50 | $4.80 | $2.20 | $36.62 |
| VI | 4376-5250 | 85 | $25.12 | $4.50 | $4.80 | $2.20 | $36.62 |
| VII | 5251-6125 | 90 | $25.12 | $4.50 | $5.80 | $1.20 | $36.62 |
| VIII | 6126-7000 | 95 | $25.12 | $4.50 | $5.80 | $1.20 | $36.62 |

c. Southern and Southeast Carpenters Local 1281 and 2247 South of 63° Parallel.

| | | |
|---|---|---|
| Wage: $23.26 | Pension: | $6.40 |
| Health/Security: $5.15 | App/Tng: | $0.60 |

d. Apprentice wages and fringe contributions shall be as indicated below and at no time shall they exceed Journeyman's.

3

Exhibit 2
Page 30 of 31

| Level | Hours | % | Wage | H&S | PEN | APPR | TOTAL |
|-------|-------|-----|--------|-------|-------|-------|---------|
| I | 0001-0875 | 60 | $17.45 | $5.15 | $2.80 | $4.20 | $29.60 |
| II | 0876-1750 | 65 | $18.90 | $5.15 | $2.80 | $4.20 | $31.05 |
| III | 1751-2625 | 70 | $20.36 | $5.15 | $3.80 | $3.20 | $32.51 |
| IV | 2626-3500 | 75 | $21.81 | $5.15 | $3.80 | $3.20 | $33.96 |
| V | 3501-4375 | 80 | $23.26 | $5.15 | $4.80 | $2.20 | $35.41 |
| VI | 4376-5250 | 85 | $23.26 | $5.15 | $4.80 | $2.20 | $35.41 |
| VII | 5251-6125 | 90 | $23.26 | $5.15 | $5.80 | $1.20 | $35.41 |
| VIII | 6126-7000 | 95 | $23.26 | $5.15 | $5.80 | $1.20 | $35.41 |

e.   On July 1st, 2005, 2006, and 2007, increases to wages and fringe benefits will be computed at 80% of Journeyman's economic package minus Health & Security.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed this 21ˢᵗ day of September 2004, by their duly authorized representatives.

Richard Cattanach, Executive Director
ASSOCIATED GENERAL CONTRACTORS OF ALASKA, INC.

John Palmatier, Executive Secretary-Treasurer
ALASKA REGIONAL COUNCIL OF CARPENTERS

4

Exhibit 2
Page 31 of 31